No. 4510.

## M. W. HUGHES *v.* L. M. PIPKIN.

The fifty-fourth section of the act of 1870, No. 100, relating to elections, repeals section 1430 of the Revised Statutes, being section No. 53 of the act of March 15, 1855, prescribing th mode of contesting elections, and the party commissioned under the provisions of said act of 1870 is *prima facie* entitled to the office he claims.

APPEAL from the Fifth District Court, parish of East Feliciana. *Posey*, J. *Wickliffe & Adams*, for plaintiff and appellant. *McVea, Kernan, Lyons & Wedge*, for defendant and appellee.

Justices concurring: Ludeling, Taliaferro, Howell and Morgan.

TALIAFERRO, J. The facts of the case seem to be that Hughes and Kilbourne were opposing candidates for the office of Parish Judge of East Feliciana, at the general election held in November, 1872. Hughes being returned as elected, Kilbourne on the twelfth day of November brought an action in the district court under the act of 1855, claiming that he was legally elected, and contested the election as between himself and his competitor, setting up various grounds of illegality and irregularity in the manner of conducting the election. Pending this contestation, Hughes filed a rule in the same court on the twentieth of January, 1873, on the defendant, Pipkin, to compel him to vacate the office and give possession of it to the claimant who was commissioned on the seventeenth of December, 1872, by P. B. S. Pinchback, then acting Governor of the State. Pipkin answered, setting up various exceptions to the plaintiff's pretensions, and averring that he was holding over until the installment of his successor and that he was not otherwise interested than in discharge of his duty to hold the office until the party legally declared entitled to the office presented himself. He plead in defense of his possession all the defenses set up by Kilbourne in his petition of intervention which was rejected by the court. All the issues between the plaintiff and Kilbourne are presented in this case between the plaintiff and the defendant. It is unnecessary to determine all the exceptions presented by the bills found in the record. That which relates to the plaintiff's commission, on the ground that it was issued in less than fifty days from the general election in pursuance of which it was issued, and on the ground that the commission was issued by an incompetent person, who is only a private citizen, and without authority as Governor of the State, was properly overruled by the court.

The rule taken by the plaintiff was discharged. The plaintiff thereupon took this appeal.

The only question presented is, does the fifty-fourth section of the act of 1870, No. 100, relating to elections repeal section 1430 of the Revised Statutes? The section 1430 of the Revised Statutes, being section No. 53 of the act of March 15, 1855, prescribing the mode of

·contesting elections, provides: "That the Governor shall not issue a commission until forty days after the day of the election for the parishes within one hundred and fifty miles from the seat of government, and fifty days for those parishes over one hundred and fifty miles from the seat of government. The distance to be computed by the usually traveled route."

The last clause of the fifty-fourth section of the act of 1870, provides that, "the Governor shall within thirty days thereafter issue commissions to all officers thus declared elected, who are required by law to be commissioned." By the act of 1870, as well as by the act of 1872, the Governor is required to issue the commissions within thirty days from the publishing in the official journal the returns of the election. By the act of 1855 the Legislature prohibits the Governor from issuing commissions sooner than forty days, in one case, and fifty days in another case. These two acts clearly conflict in one particular on the same subject matter, and that is, in regard to the time to be observed by the Governor in the issuing of commissions. Here is a point of direct collision. We can not give effect to both enactments. We are, however, relieved from the dilemma by the last section of the act of 1870, which provides " that all laws or parts of laws contrary to the provisions of this act, and all laws relating to the same subject matter are hereby repealed, and that this act take effect from and after its passage."

The plaintiff was duly commissioned under the provisions of the last act, and *prima facie* is entitled to the office in controversy.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled and reversed. It is ordered that the rule be made absolute; and that the defendant, L. M. Pipkin, vacate the office of Parish Judge of the parish of East Feliciana, and cease to discharge the duties thereof, and that he deliver the said office with all the papers, records and archives appertaining thereto to the plaintiff, the defendant and appellant paying costs in both courts. This decree is in no manner to prejudice the rights of the contestant, Kilbourne, in any proceedings he may have instituted, or may hereafter institute according to law in support of any claim or right he may have to the said office.

WYLY, J., *dissenting.* This being a proceeding by rule, under act approved fifteenth January, 1873, to obtain possession of the office of parish judge of the parish of East Feliciana, I think the action should fail, because said statute is unconstitutional and void. My reasons for this conclusion I had occasion to express in the case of Morgan *v.* Kennard, lately decided, and I now refer to my dissenting opinion in that case in support of the position I take in this case.

But leaving out of view the objection to the form of the proceeding, I think on the merits the case is with the defendant.

The defendant contends that the commission issued to the plaintiff and upon which, as *prima facie* proof, he seeks to get possession of the office occupied by him, is utterly null and void, and was not contemplated by the statute under which the rule herein was taken, because said commission was issued contrary to a prohibitory law.

Kilbourne and Hughes were opponents at the election held on the fourth day of November, 1872, for the office of parish judge; and pursuant to the provisions of the Revised Statutes of 1870 on the subject of contested elections, Kilbourne instituted a regular contested election suit against Hughes, and notified the Governor thereof, that no commission might issue pending the controversy. Notwithstanding which and notwithstanding the prohibition of section 1430 of said Revised Statutes, the Governor issued a commission to the said Hughes.

The defendant, the incumbent, holding over under article 122 of the constitution, has the right to resist the pretensions of the plaintiff, if the commission, which he presents as his *prima facie* right to the office, was issued contrary to a prohibitory law, because what is done in contravention of a prohibitory law is an absolute nullity.

The law on the subject of " contested elections," section 1421 Revised Statutes, provides that : " Within ten days after the election, the party contesting shall present to the court, and which shall be filed, a petition, signed by at least twenty of the voters of the parish,    *    *    * praying the court to examine the facts and decide thereon."

Section 1422 : " After ten days from the date of service of the petition of the contestant,  *    *    *   the adverse party shall be bound to answer, and the issue thus formed shall be proceeded with summarily before the court and jury. The trial shall be conducted and submitted to the jury according to the laws by which other jury trials are governed.    *    *    *    The jury shall have power to determine by their verdict which of the parties is entitled to the office, or to refer the same again to the people. The court shall have no power to grant a new trial as in other cases, and no appeal shall be allowed."

Section 1423 provides that : "The judgment rendered upon the first finding of the jury shall be final; and on certifying the same to the Governor a commission shall be issued by him in favor of the person in whose favor the verdict may be."

Section 1424 declares that : "If the finding of the jury be in favor of a new election, the sheriff or coroner may proceed to hold an election, etc., etc."

Section 1430 provides that : " The Governor shall not issue a commission until forty days after the day of election, for the parishes within one hundred and fifty miles from the seat of government, and

9

fifty days for those parishes over one hundred and fifty miles from the seat of government. The distance to be computed by the usual traveled route. On the successful candidate furnishing to the Governor a copy of the judgment of the court in his favor, duly certified by the clerk, dated after the last day of the term, the Governor shall immediately issue a commission to such successful party. The certificate of the clerk showing either that the contest has been abandoned or the right to prosecute is lost by non-compliance with the provisions of law, the Governor shall issue his commission in favor of the person in whose favor the certificate of election has been granted. In either case the Governor shall only issue the commission upon the party complying with the other requirements of law."

By the express terms of the law the Governor, who was notified that Hughes' election was contested, had not the right, indeed he was prohibited from issuing a commission until the controversy was settled.

The commission, therefore, obtained by Hughes in contravention of a prohibitory law being an absolute nullity, furnishes not even *prima facie* proof of title to the office in dispute; and for that reason he must fail in his demand on the merits. But the plaintiff contends, and the majority of the court decides, that that part of the law on the subject of "contested elections" forbidding the Governor to issue commissions in contested election cases, pending such controversies, was repealed by the statute approved sixteenth of March, 1870, being act No. 100 of the acts of 1870. And section eighty-five is referred to to establish the position. It declares: "That all laws or parts of laws contrary to the provisions of this act, and all laws relating to the same subject matter are hereby repealed, and that this act shall take effect from and after its passage."

In order to determine the subject matter of the act let us look to its title. It is "An Act to regulate the conduct and to maintain the freedom and purity of elections; to prescribe the mode of making and designating the officers who shall make the returns thereof; to prevent fraud, violence, intimidation, riot, tumult, bribery, or corruption at elections, or at registration or revision of registration; to limit the powers and duties of the sheriffs of the parishes of Orleans and Jefferson; to prescribe the powers and duties of the board and officers of the Metropolitan Police in reference to elections; to prescribe the mode of entering on the rolls of the Senate and House of Representatives the names of members; to empower the Governor to preserve peace and order; to enforce the laws; to limit the powers and duties of the mayors of the cities of New Orleans and Jefferson with regard to elections; to prohibit district or parish judges from issuing certain writs to commissioners of election; to make an appropriation for the

expenses of the next revision of the registration and of the next election, and to enforce article one hundred and three of the constitution."

It was not the object of the act to repeal the sections of the Revised Statutes of 1870, on the subject of "contested elections," to which I have referred, because this is not mentioned in the title of the act No. 100 of the acts of 1870, as one of its objects. And if the repealing clause be considered sufficiently comprehensive to embrace those sections of the Revised Statutes, that part of the repealing clause would contravene article 114 of the constitution and be void, because such an object is not expressed in the title of the act.

But the repealing clause only repeals all laws upon "the same subject matter." There is nothing in the statute upon the subject matter of "contested elections."

The only law upon the subject matter of "contested elections" is to be found under that title or heading in the Revised Statutes, approved fourteenth day of March, 1870.

Now, can it be seriously contended that on the sixteenth March, only two days after the approval of the Revised Statutes, the lawgiver intended to repeal the enactment on the subject of "contested elections," when he passed the act No. 100 entitled "an act to regulate the conduct and maintain the freedom of elections," etc.; in which act there is not one word on the subject of contested elections and there is no such object expressed in the title.

Is the will of the lawgiver in regard to contested elections to be considered revoked because, two days after giving it, he sees fit to prescribe a general rule to regulate the conduct of elections? I think not. The two laws have separate and distinct objects. One to regulate the manner of holding an election and the other to remedy an evil that may arise out of that election. But it is contended that the repealing clause of act No. 100 of the acts of 1870 only repeals that part of the law forbidding the issuing of the commission by the Governor pending a contested election case.

To this the reply is, that if it repeals any part of the contested election law it repeals the whole, because in order to give effect to the clause repealing "all laws on the same subject matter," it must be held that the sections of the Revised Statutes on the subject of contested elections are "on the same subject matter."

Now, can it be presumed that the lawgiver intended to repeal the law upon the subject of contested elections, and leave no remedy for the evil said law was intended to correct? Surely not. Such an intention can not fairly be deduced from the language of the law, and it is not in express terms declared.

But it is contended that if act No. 100 does not, in express terms, repeal the law upon the subject of contested elections, it does, by

implication, repeal that part of it forbidding the issuing of the commission pending a contested election suit. And in support of this position, that portion of the law is cited wherein the Governor is authorized to issue commissions within thirty days after the promulgation of the returns of the election, " to all officers thus declared elected, who are required to be commissioned."

The repeal of laws by implication is not favored; and where two statutes, having different objects in view, conflict in some of their provisions, it is a sound rule of construction to interpret the two laws so as to give effect, if possible, to both.

Here the law is, that the Governor shall issue commissions to all officers returned as elected within thirty days after said return. This is the general rule; and it has no application to cases of contested election; because there is nothing in the law showing that such was the intention of its authors, and because the time when, and the conditions upon which commissions might issue in contested election cases, were expressly provided for in a previous law, to wit: the Revised Statutes approved two days before, March 14, 1870. It is there provided that, " the judgment rendered upon the first finding of the jury shall be final, and on certifying the same to the Governor, a commission shall be issued in favor of the person in whose favor a verdict may be." " On the successful candidate furnishing to the Governor a copy of the judgment of the court in his favor, the Governor shall immediately issue a commission to such successful candidate."

Here, Hughes in advance of the trial of the contested election suit, procures from the Governor a commission for the office of parish judge, and upon this he claims possession of the office. Suppose he is successful in the contested election suit, will the Governor be required to issue to him another commission on being furnished with a copy of the judgment in his favor? Suppose his opponent gets judgment that he was the successful candidate, of course the Governor must issue to him a commission immediately on receipt of a copy of the judgment. Then there will be two commissions, two titles, issued for the same office, Hughes being in possession. Will his opponent be compelled to resort to a suit under the intrusion act to get the possession? Can a party, pending a controversy for the title and possession of an office, be compelled to resort to another action to obtain the possession which his adversary gained or took pending the action? Suppose the jury should find that there was no legal election of either of the contestants and "refer the same again to the people," will Hughes, who was never elected, be permitted to administer the office of parish judge? In my opinion all these difficulties will be obviated by simply giving effect and meaning to both laws, to wit: by holding that act No. 100 refers to elections not pending in a contested election suit. In such

cases the Governor shall issue commissions within thirty days after the returns. This is the general rule. The exception is where the Governor is notified that there is a contested election suit pending. In such case it is neither the express nor implied intention of the law to give either of the contestants the title or the possession of the office till the controversy is judicially determined.

For the reasons stated I deem it my duty to dissent in this case.